UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CHRISTINE M. SKOVRAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO. 3:06-CV-0479 CAN |
| ) | |
| SOCIAL SECURITY ) | |
| ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

On August 4, 2006, Plaintiff Christine Skovran (Skovran) filed her complaint in this Court. On January 8, 2007, Skovran filed an opening brief in which she asks this Court to enter judgment in her favor or to remand this matter to the Commissioner. On March 23, 2007, Defendant Social Security Administration (SSA) filed its response brief. On March 28, 2007, Skovran filed her reply brief.  This Court now enters its ruling based upon the record of this case that includes the pleadings, the motions, the administrative record, briefs of the parties, and the arguments of counsel.

**I.   PROCEDURE**

On January 6, 2003, Skovran filed her application for Disability Insurance Benefits (Tr 16). Skovran also filed an application for Supplemental Security Income on January 6, 2003 (Id.). Skovran is insured for Disability Insurance Benefits through December 31, 2007 (Id.). Skovran claims she is entitled to benefits pursuant to Titles II and XVI of the Social Security Act. See 42 U.S.C. §§ 416(i), 423, 1382c(a)(3). On May 3, 2005, Skovran appeared at a hearing

before an Administrative Law Judge (ALJ), who issued a denial of Skovran's claim (Tr. 16-23). On December 8, 2005, the ALJ found Skovran not disabled (Tr. 16-23).

The ALJ found that Skovran had not engaged in substantial gainful activity since June 1, 2002.  The ALJ also addressed Skovran's reported medical conditions as well.[1]  The ALJ found that Skovran did not have any impairments or combination thereof that met one of the impairments in 20 C.F.R. app. 1, subpart P, § 404 (Id.).  The ALJ found that Skovran had the residual functional capacity (RFC) to perform the full range of light work (Id.).[2]  Therefore, Skovran could perform her past work, and the ALJ noted that in the alternative, she could perform other jobs that existed in significant number in the national economy, which meant Skovran was not disabled (Tr. 69-73).

Skovran appealed the ALJ's decision to the Appeals Council (Tr. 5).  The Appeals Council denied Skovran's request for review on June 15, 2006, and as a result, the ALJ's decision became the Commissioner's final decision (Id.). 20 C.F.R. § 404.981; Fast v. Barnhart, 397 F.3d 468, 470 (7th Cir. 2005). Consequently, on August 4, 2006, Skovran filed a complaint in this Court seeking a review of the ALJ's decision. This Court may enter a ruling in this matter based on the parties' consent, 28 U.S.C. § 636(c), and 42 U.S.C. § 405(g).

---

[1] Her impairments of diabetes, and perirectal abscesses with a history of anal fistula and necrotizing fasciitis were severe (Tr. 18).  The ALJ addressed Skovran's depression claim, but determined that it did not qualify as a severe impairment (Tr. 20).  The ALJ concluded that claimants cognitive limitations were "mild" (Id.).

[2] Light work involves lifting no more than twenty (20) pounds at a time with frequent lifting or carrying of objects weighing up to ten (10) pounds, and / or standing and walking for about six (6) hours during an eight (8) hour work day more than occasional conversations with co-workers, supervisors, or the public.  20 C.F.R. § 404.1567(b).

**II.    ANALYSIS**

    A.    Facts

At the time of the ALJ's decision, Skovran was a 37 year old with a high school education (Tr. 46-47). Her most recent employment was as a head teller at a local bank (Tr. 47). Skovran alleges that she has both physical and psychological limitations. Specifically, Skovran alleges that she suffers from recurrent anorectal abscesses leading to chronic pain in the anal region (Tr. 51-53). Additionally, she alleges depression that consists of a nervous condition and mood swings that can change instantly (Id.). Skovran alleges that her problems cause her to not function well around people (Tr. 73). She becomes nervous and cries for no reason, which affects her ability to concentrate and work (Tr. 54). Skovran alleges her problems allow her to do only light housework, such as intermittently washing dishes (Tr. 59). She has trouble sitting, standing, and she frequently lies down in her bed to take breaks (Tr. 59-61). Skovran sees two main doctors, Dr. Frank Harford, M.D. ("Dr. Harford"), and Dr. Prasad Babu ("Dr. Babu") (Tr. 19).

       1.    Dr. Harford

Skovran saw Dr. Harford on numerous occasions for her physical problems.[3] She developed a perirectal abscess and necrotizing soft tissue infection that required debridement surgery in October 2000 (Tr. 19). Additional debridement was necessary in November of that same year (Id.). On February 10, 2002, Skovran went to the emergency room because of right buttock pain (Id.). She was diagnosed with perirectal abscess and underwent an incision and drainage (Id.). She was hospitalized again on November 24th and 27th, 2002, for a similar

---

[3] Skovran did see other doctors as well; however, Dr. Harford was the main practitioner who is the main source referenced by the ALJ in his decision.

3

procedure of incision and drainage (Id.). An MRI performed in February of 2003 revealed a rectal cutaneous fistula, which was surgically repaired that same month (Id.).

  2. Dr. Babu

Skovran was referred to Dr. Babu[4] from Dr. Serwatka, her family physician, because of claimant's reported depression stemming from her personal financial concerns and pending medical problems with her husband (Id.). Dr. Babu's initial diagnosis in August of 2003 indicated that Skovran had major depression (Id.at 19, 268).  He prescribed her medication that was later discontinued because it was interfering with Skovran's glucose levels, at which time an alternative medication was provided (Tr. at 19). Dr. Babu's last progress note indicated that Skovran was crying more and became angry more often (Id.at 19, 384-86). Additionally, he noted that she discontinued her medication because she lacked adequate funds to pay for them (Id.).

  B. Standard of Review

The standard of review for an ALJ's decision is whether it is supported by substantial evidence and free of legal error. See 42 U.S.C § 405(g); Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005); Haynes v. Barnhart, 416 F.3d 621, 626 (7th Cir. 2005); Golembiewski v. Barnhardt, 322 F.3d 912, 915 (7th Cir. 2003). Substantial evidence means such relevant evidence as a reasonable mind might accept to support such a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1972).  Yet, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003).  While a

---

[4] Dr. Babu is an M.D. at the Swanson Center who has worked with claimant on her depression.  Dr. Babu worked with the claimant from August 2003 - August 2006 (Tr. 384-86).

4

reviewing court is not to substitute its own opinion for that of the ALJ's or to re-weigh the evidence, it will not simply rubber stamp the ALJ's decision without carefully reviewing the presented evidence. Clifford v. Apfel, 227 F.3d 863, 869 (7th Cir. 2000). Ultimately, the ALJ must build a logical bridge from the evidence to his conclusion. Haynes, 416 F.3d at 626. Also any of the ALJ's legal conclusions are reviewed *de novo* (Id.).

        C.        Skovran's Motion for Summary Judgment or Remand

To be entitled to benefits under 42 U.S.C. §§ 423, 1321a, Skovran must establish that she was "disabled." See 42 U.S.C. § 423(a)(1)(D). The Social Security Act defines "disability" as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A). The Social Security regulations prescribe a sequential five-part test for determining whether a claimant is disabled. The ALJ must consider whether: 1) the claimant is presently employed; 2) the claimant has a severe impairment or combination of impairments, 3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity, 4) the claimant's residual functional capacity leaves him unable to perform his past relevant work, and 5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(I)-(v), 416.920; Briscoe, 425 F.3d at 352. If the ALJ finds that the claimant is disabled or not disabled at any step, he may make his determination without evaluating the remaining steps. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If there is an affirmative answer at either step three or step five, then there is a finding of disability. Briscoe, 425 F.3d at 352. At step three, if the impairment meets any of the severe impairments listed in the regulations, the

5

Commissioner acknowledges the impairment. See 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. app. 1, subpart P, § 404. However, if the impairment is not so listed, the ALJ assesses the claimant's residual functional capacity, which in turn is used to determine whether the claimant can perform her past work under step four and whether the claimant can perform other work in society under step five. 20 C.F.R. § 404.1520(e). The claimant bears the burden of proof on steps one through four, but the burden shifts to the Commissioner at step five. Id.

Skovran asserts two main arguments attacking the ALJ's assessment of her case.  First, Skovran contends that the ALJ erred by not awarding controlling weight to the opinions of her treating physicians.  Second, Skovran argues that the ALJ failed to appropriately assess Skovran's credibility.

> 1. The ALJ's determinations to not give controlling weight to Skovran's physicians were supported by substantial evidence.

Skovran contends that the ALJ erred by not assigning more evidentiary weight to the opinions of her treating physicians Dr.s Harford and Babu.  An ALJ is to give a treating physician's opinion controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and consistent with other substantial evidence in the record. Hofslien v. Barnhart, 439 F.3d 375, 376 (7th Cir. 2006). Treating physicians' opinions are generally given more weight because they are more familiar with the claimant's conditions and circumstances. 20 C.F.R. § 404.1527(d)(2); Clifford, 227 F.3d at 870.  However, a claimant is not entitled to benefits merely because a treating physician labels her as disabled. Dixon v. Massanari, 270 F.3d 1171, 1177 (7th Cir. 2001); see 20 C.F.R. § 404.1520(e)(1) (explaining that statements by medical sources indicating disability or inability to work does not mean that the

6

SSA will determine claimant disabled). Courts must carefully evaluate a treating physician's testimony because he may be biased in favor of the claimant, or want to do a favor for a friend or client. Butera v. Apfel, 173 F.3d 1049, 1056 (7th Cir. 1999) (explaining that the treating physician may not completely appreciate how his patient compares with others as an impartial consulting physician would).

Valid reasons to deny controlling weight to a treating physician's opinions are when medical evidence is internally inconsistent or inconsistent with other objective evidence in the record. Dixon, 270 F.3d at 1177; Clifford, 227 F.3d at 870-71. When qualifying evidence in opposition to the treating physician presumption is introduced, the treating physician rule drops out and the evidence is just one more piece for the ALJ to weigh. Hofslien, 439 F.3d.at 377 (citations omitted). While the ALJ can deny controlling weight to the treating physician, the ALJ must avoid substituting his own opinion for that of the treating physician without relying on medical evidence or authority in the record. 20 C.F.R. § 404.1527(d)(2); Clifford, 227 F.3d at 870; Rohan v. Chater, 98 F.3d 966, 968 (7th Cir. 1996). Unfortunately, there is no bright line for when a physician's opinion is inconsistent with other substantial evidence in the record, and it is essentially a case-by-case determination depending on the circumstances. Hofslien, 439 F.3d.at 377. In the end, the ALJ is responsible with deciding the ultimate issue of disability. Clifford, 227 F.3d at 870; see also 20 C.F.R. § 404.1527(e).

In Skovran's case, the ALJ recognizes, and every doctor in the record agrees, that Skovran was diagnosed as having perirectal abscesses with a history of anal fistula and necrotizing fasciitis (Tr. 18). However, Skovran contends that the ALJ committed error because he decided not to give controlling weight to the opinions of Skovran's doctors and their claims of

7

disability because he failed to provide an adequate explanation of his findings by not citing to contrary medical evidence with both Dr. Harford and Dr. Babu.

     a.  Dr. Harford

  The ALJ pointed to the fact that Dr. Harford's examinations described great progress by Skovran and that she was completely healed with no active infection (Tr. 21).  Moreover, Dr. Harford wrote that Skovran could not maintain employment due to her physical limitations even though he had recently noted that he could not find a source of her pain.  (Id.).  Dr. Harford proceeded to limit Skovran's work activities to lifting of ten (10) pounds or less and limited sitting and standing.  (Id.).  Conversely, the consulting physicians found that her physical limitations were limited but not as severe as represented by Dr. Harford.  (Id.).  The consulting physicians concluded that Skovran could do light work with minimal postural movements, and the ALJ found these conclusions paralleled Dr. Harford's examination records (Id.).

  Skovran argues that the ALJ did not specifically elaborate on what objective evidence made Dr. Harford's opinions inconsistent.  This argument misconstrues the ALJ's opinion. The ALJ highlighted the differences between Dr. Harford's examination reports suggesting full recovery with his later note of disability.  Specifically, the ALJ highlighted Dr. Harford's reports which indicated Skovran's full recovery from the surgery and the initial prognosis of her ability to return to work in six (6) weeks.  Likewise, the ALJ stated that Skovran continued to allege pain despite Dr. Harford's inability to locate the source of the pain.   Under Hofslein, the ALJ's analysis as to Dr. Harford's examination reports outlines several reasonable internal inconsistencies, which is a valid reason to deny controlling weight to a treating physician's

8

opinion. Clifford, 227 F.3d at 871.  This Court finds that it was reasonable for the ALJ not to award Dr. Harford controlling weight due to the inconsistencies he outlined.

                b.        Dr. Babu

Skovran also contends that Dr. Babu's assertions were erroneously dismissed.  The ALJ reasoned that Dr. Babu's medical notes did not support the progress reports, and the complaints cited in the report were subjective.  The ALJ stated that Dr. Babu failed to explain the reasons for his assessments when he claimed that Skovran had a serious mental impairment.  Similarly, the ALJ pointed out that a report by a therapist contained subjective explanations from Skovran and her husband, and not personal observations by the therapist.  In addition, the ALJ discarded a therapist's report whom the ALJ claimed, "is not an acceptable medical source" (Tr. 19).

Skovran argues under the analysis of Lauer v. Apfel, 169 F.3d 489, 493-94 (7th Cir. 1999) that the ALJ's reasoning for dismissing the therapist's reports was erroneous.  This Court agrees with Skovran's understanding of Lauer.  Under Lauer and 20 C.F.R. § 404.1513(a), evidence from an acceptable medical source is needed to establish an impairment, but reports from non-physicians are helpful when determining a RFC provided it is complete and detailed under 20 C.F.R. § 404.1513(d)-(e).[5]  Thus, it was error for the ALJ to discount the therapist's records as not acceptable medical evidence.

However, any error by the ALJ was harmless.  While the ALJ erred in discarding the notes, his error was not critical to his decision of not giving controlling weight to Dr. Babu.  The ALJ satisfied his ultimate burden under Hofslein not to award Dr. Babu controlling weight

---

[5] Lauer further indicates that an ALJ must consider all of the evidence and discuss significant evidence contrary to his ruling. Lauer, 160 F.3d at 494.  As in Lauer, the therapist's comments substantiated Dr. Babu's original report that Skovran was depressed.  This evidence would have been contrary to the ALJ's ruling not to give controlling weight to Dr. Babu and should have been considered.

9

because he pointed to internal inconsistencies in the record and other objective medical evidence. The ALJ pointed to insufficient explanations in many parts of Dr. Babu's notes as well as the consulting physician's review that Skovran was limited only by her physical capacity (Tr. 19).[6] The ALJ noted that Skovran improved when she took her medications and that the initial report by Dr. Babu was made very early into treatment (Tr. 19). The ALJ noted that Skovran cancelled many appointments and did not frequently attend her therapy as required (Id.).[7] Also Dr. Universaw, one of the consulting physicians, mentioned that Skovran's capacity to work was not as limited as noted by Dr. Babu. (Id.). Dr. Universaw noted that Skovran retained the ability for simple, repetitive work. However, Dr. Universaw's report also indicated that Skovran's ability to understand, remember, and carry out detailed instructions was not severely limited (Tr. 20). The ALJ determined that this evidence in the record discounted Dr. Babu's assessments of Skovran's limited mental capacity. Therefore, because the ALJ cited proper objective evidence, this Court finds that the ALJ's decision not to award controlling weight to Dr. Babu's opinion was supported by substantial evidence.

While the ALJ could have, no doubt, been clearer with his analysis, this Court is able to follow the ALJ's reasoning. The ALJ explained that he did not give Dr. Harford and Babu's opinions controlling weight because they were internally inconsistent and not consistent with

---

[6] Skovran argues that the ALJ misstated the claimants limitations when he noted that she had mild limitations (Tr. 20). Upon careful review of the record, the ALJ did misstate the findings. Claimant had mild limitations in her activities of daily living (Tr. 296). However, she had moderate limitations related to maintaining social functioning, and moderate deficiencies of concentration, persistence, or pace. Id. Claimant argues that this should lead to a finding of a severe impairment. This misstates 20 C.F.R. § 1520a(d)(2) because this section provides the ALJ discretion to find the level of severity by looking to the evidence presented as a whole. Regardless, this was not the sole factor for the ALJ's disposition of Dr. Babu's records.

[7] Review of the record demonstrates that claimant cancelled her appointments four (4) times and was a no show once (1) out of fifteen (15) total scheduled meetings (Tr. 384-86).

10

other objective medical evidence.  Essentially, Skovran appears to be asking this Court to re-weigh the evidence by giving more weight to the doctors' opinions, which it will not do.  <u>Haynes</u>, 416 F.3d at 626.  Therefore, this Court finds that the ALJ's determination to not give controlling weight to Dr. Harford and Babu's opinions regarding Skovran's physical and mental limitations was supported by substantial evidence.

        2.      <u>The ALJ's determination that Skovran was not credible was not supported by substantial evidence</u>.

Because an ALJ is in a special position where he can hear, see, and assess witnesses, his credibility determinations are given special deference, and as a result, his credibility determinations will only be overturned if they are patently wrong.  <u>Jens v. Barnhart</u>, 347 F.3d 209, 213 (7th Cir. 2003).  While an ALJ is not required to provide a "complete written evaluation of every piece of testimony and evidence," an ALJ cannot simply state that an individual's allegations are not credible.  <u>Rice v. Barnhart</u>, 384 F.3d 363, 370 (7th Cir. 2004) (quoting <u>Diaz v. Chater</u>, 55 F.3d 300, 308 (7th Cir. 1995)); <u>Golembiewski</u>, 322 F.3d at 915.  Further, the ALJ may not simply recite the factors that are described in the regulations for evaluating symptoms. <u>Zurawski v Halter</u>, 245 F.3d 881, 887 (7th Cir. 2001).  Social Security Ruling 96-7p requires an ALJ to articulate specific reasons in a credibility finding. <u>Golembiewski</u>, 322 F.3d at 915; <u>Steele v. Barnhart</u>, 290 F.3d 936, 942 (7th Cir. 2002). When an ALJ's determinations are based on objective factors rather than subjective considerations, such as the claimant's demeanor, there is greater freedom to review the ALJ's decision. <u>Clifford</u>, 227 F.3d at 872. Yet, "only if the trier of fact grounds his credibility finding in an observation or

11

argument that is unreasonable or unsupported . . . can the finding be reversed." Prochaska v. Barnhart, 454 F.3d 731, 738 (7th Cir. 2006) (citations omitted).

Skovran contends that the ALJ's findings regarding her claims and credibility were erroneous.  This Court agrees and finds the ALJ's dismissal of Skovran's credibility is not supported by substantial evidence.  An ALJ must base his decision on all relevant evidence. Herron v. Shalala, 19 F.3d 329, 333 (7th Cir. 1994).  Under 20 C.F.R. § 404.1545(4), the ALJ shall consider not only the physical and mental requirements of the claimant's past work, but also the other requirements needed to perform that work when determining the RFC.  An ALJ does not need to provide a written analysis of every piece of evidence, but an ALJ may not fail to discuss an entire line of evidence. Green v. Shalala, 51 F.3d 96, 101 (7th Cir. 1995).  The ALJ noted in his opinion that Skovran's alleged disability claims, including her need to take sitz baths after each bowl movement and her continual pain were not credible (Tr. 20).  Yet, the ALJ fails to adequately explain his rationale supporting his decision.

There are several references to Skovran's need to take sitz baths in the record.  Dr. Richard Gamelli, M.D. was the original doctor who recommended that Skovran take baths after each bowl movement to keep the area and infections clean (Tr. 76).  Progress notes also indicated that Dr. Harford had previously prescribed sitz baths after each bowl movement (Tr. 246-63).  Furthermore, the ALJ highlighted the importance of the sitz baths when he questioned the vocational expert (V.E.), Dr. Leonard Fischer, during the hearing (Tr. 72-73).  Despite all of the evidence and the ALJ's recognition of Skovran's need to take sitz baths, the ALJ did not at all discuss how Skovran's need to take sitz baths would impact her work requirements. Furthermore, it was important for the ALJ to address this claim because when the ALJ inquired

about the Skovran's ability to maintain employment if such actions were required, the V.E. testified that she would unlikely be able to maintain competitive employment (Id.).[8] Because the ALJ failed to address the line of evidence of Skovran's need to take sitz baths, this Court cannot say the ALJ's opinion was supported by substantial evidence.  See  Green, 51 F.3d at 101.

Second, the ALJ did not discuss Skovran's claims of pain.  If an ALJ finds that an allegation of pain is not supported by the objective medical evidence in the record, and if the claimant still indicates that pain is a significant factor of his or her alleged disability, then the ALJ must a obtain detailed description of the claimant's daily activities by directing specific inquires about the pain and its effects to the claimant. Zurawski, 245 F.3d at 887; 20 C.F.R. § 404.1529(a)-(c).[9]  Moreover, the ALJ must investigate all avenues presented that relate to pain, including prior work information, observations by treating physicians, observations by examining physicians, and observations by third parties.  Id.  The ALJ must consider factors of pain, precipitation and aggravating factors, dosage and effectiveness of pain medications, other treatment for relief of pain, functional restrictions, and the claimant's daily activities.  Id.  Where the medical signs and findings reasonably support a claimant's complaint of pain, the ALJ cannot merely ignore the claimant's allegations.  Id. at 887-88.

The ALJ noted that Skovran complained of frequent anal pain and infections, she had to take a sitz bath after each bowl movement, took pain medication, and could do limited functions

---

[8] Interestingly, the ALJ's final decision appeared to give great credence to the vocational experts opinions about Skovran's ability to perform her past work (Tr. 22).  Yet, the ALJ does not mention any reference to the V.E.'s opinions about Skovran's inabilities to work.

[9] The ALJ must consider "other evidence" that you, your treating or nontreating source, or other persons provide about your pain or other symptoms. Other evidence includes: what may precipitate or aggravate your symptoms, what medications, treatments or other methods you use to alleviate them, and how the symptoms may affect your pattern of daily living is an important indicator of the intensity and persistence of your symptoms. Id.

13

because of physical and emotional limitations (Tr. 20).  Additionally, claimant's husband corroborated her claims of physical and mental limitations, and the need to take the sitz baths. Id.[10]  Despite repeated references in the record to Skovran's personal claims of pain, again the ALJ does not discuss them.  The ALJ restates Skovran's claims, but simply restating Skovran's testimony does not establish the logical bridge to properly discount Skovran's claims.  This Court stresses that it will not simply rubber stamp an ALJ's decision without carefully reviewing the record. Clifford, 227 F.3d at 869.  Without more explanation, this Court cannot say the ALJ's opinion is supported by substantial evidence.[11]

The ALJ must build the adequate logical bridge from the evidence to the conclusion, and this Court finds the bridge is still under construction.  This Court is not suggesting that the ALJ's final determination was incorrect, but only that more elaboration is necessary.  Without such, this Court cannot say at this point whether the ALJ's opinion was supported by substantial evidence or not.  Consequently, a remand is warranted.

### III.   CONCLUSION

---

[10] When a witness's testimony does not constitute a separate line of evidence and merely reiterates the claimant's testimony, an ALJ does not need to address it. See Books v. Chater, 91 F.3d 972, 980 (7th Cir. 1996); Carlson v. Shalala, 999 F.2d 180, 181 (7th Cir. 1993).  The ALJ merely needs to articulate his assessment to assure this Court that he considered the most important evidence so that the ALJ's reasoning can be traced. Books, 91 F.3d at 980.  Because Skovran's husband testified to substantially the same information as Skovran herself, the ALJ did not commit error by failing to address their testimony in more detail as Skovran implies.

[11]    Interchangeably, Skovran's claims of depression presents a similar problem within the ALJ's opinion.  The ALJ failed to address the claimant's alleged mental and emotional impairments.  The V.E. testified that a worker with Skovran's purported disagreeable characteristics would also have trouble maintaining employment (Tr. 74-75).  There is ample evidence in the record that substantiates Skovran's claims of depression and limited mental functionality.  But again, the ALJ merely referenced Skovran's claims relating to her mental problems, and he failed explain his decision for finding her claims of depression not credible (Tr. 20).

The ALJ's determination that Skovran's treating physicians were not entitled to controlling weight was supported by substantial evidence, but the ALJ's analysis of the claimant's credibility was not fully supported by substantial evidence.   As a result, this Court **GRANTS** Skovran's request and this case is **REVERSED** and **REMANDED** to the Commissioner for proceedings consistent with this opinion pursuant to sentence four (4) of 42 U.S.C. § 405(g).  The clerk is instructed to term the case.

**SO ORDERED**.

Dated this 25th Day of June, 2007

  S/Christopher A. Nuechterlein
Christopher A. Nuechterlein
United States Magistrate Judge